**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DIANE GARRITY as Court-Appointed
Guardian Ad Litem for L.A., a minor,

      Plaintiff,

v.                                       Civ. No. 20-340 MV/KK

GOVERNANCE BOARD OF CARIÑOS
CHARTER SCHOOL *et al.*,

      Defendants.

<u>**ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO QUASH SUBPOENAS**</u>

      THIS MATTER is before the Court on Henry Narvaez's and Ronald VanAmberg's ("Movants") Motion to Quash Subpoenas or, in the Alternative, to Enter a Protective Order as to Subpoenas Served on Attorneys Henry Narvaez, Esq. and Ronald VanAmberg, Esq. (Doc. 44) ("Motion"), filed April 18, 2021. Plaintiff filed a response in opposition to the Motion on May 25, 2021, and Movants filed a reply in support of it on June 23, 2021. (Docs. 51, 60.) The Court, having reviewed Movants' and Plaintiff's submissions, the record, and the relevant law, and being otherwise fully advised, FINDS that the Motion is well taken in part and should be GRANTED IN PART and DENIED IN PART as set forth below.

**I.  <u>Background and Procedural History</u>**

      In this civil action, Plaintiff asserts claims for substantive due process and equal protection violations under 42 U.S.C. § 1983, violations of Title IX, 20 U.S.C. §§ 1681-1688, and negligence based on Defendant Vernon Jaramillo's alleged sexual abuse of L.A., a minor child, from 2016 to 2018, while he was "Chancellor, CEO, and Counselor" of the Cariños Charter School ("School") and she was a student there. (Doc. 1.) Movants are attorneys who have not entered an appearance

in this matter but who "have provided legal representation to the Defendants" in the past.[1] (Doc. 44 at 2.) On February 22, 2021, Plaintiff's counsel served Subpoenas to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("Subpoenas") on both Movants. (Docs. 44-1, 44-2.) The two Subpoenas are virtually identical except that the Subpoena directed to Mr. Narvaez omits one category of documents included in the Subpoena directed to Mr. VanAmberg. (*Id.*) The Subpoenas commanded production of the specified documents by March 15, 2021. (*Id.*)

Jerry A. Walz, counsel for Defendant the Governance Board of Cariños Charter School ("Board"), accepted service on Movants' behalf and, on March 19, 2021, served objections to the Subpoenas in lieu of producing any documents. (Doc. 44 at 2; Docs. 44-3, 44-4.) Although Movants' objections included claims of attorney-client privilege and work-product protection, Movants did not produce a privilege log. (*See generally* Docs. 44-3, 44-4.) By and through Mr. Walz, Movants filed the Motion presently before the Court on April 18, 2021, after counsel's attempts to resolve their disputes without Court intervention failed. (Doc. 44 at 2.)

In their Motion, Movants ask the Court to either quash the Subpoenas or issue a protective order forbidding disclosure of the documents the Subpoenas seek. (*Id.* at 16.) As grounds, Movants assert undue burden, overbreadth, lack of relevance and proportionality, attorney-client privilege, and the attorney work-product doctrine. (*See generally id.*) Relatedly, Movants argue that Plaintiff already possesses non-privileged and non-protected documents responsive to the Subpoenas because these documents have been produced in *Garrity as Court-Appointed Guardian Ad Litem*

---

[1] However, as Plaintiff observes, the record "is unclear whether each attorney represented [Defendant the Governance Board of] Cariños [Charter School] and/or [Defendant] Jaramillo, and when representation began and ended." (Doc. 51 at 16; *see, e.g.*, Doc. 51-4 at 1 (Dec. 2, 2011 letter indicating that Mr. Narvaez's firm represented the School); Doc 51-6 at 1-3 (Feb. 8, 2018 letter indicating that Mr. VanAmberg represented the School and hired June Romero to conduct investigation on its behalf in "early October" 2017); Doc. 51-8 at 1-2 (Oct. 17, 2017 letter indicating that Mr. Narvaez hired Ms. Romero to conduct investigation); Doc. 51-9 (May 23, 2018 Entry of Appearance by Mr. Narvaez on Defendant Jaramillo's behalf in lawsuit filed by School employee).)

*for S.N.G., a minor v. Governance Board of Cariños Charter School*, Civ. No. 19-95 JAP/JHR

(D.N.M. filed Feb. 4, 2019) ("*S.N.G.*"), an earlier-filed case involving allegations that Defendant

Jaramillo sexually abused S.N.G., another student at the School. (*Id.* at 8-9, 13.) According to

Movants, the parties "tacitly agreed that the discovery in [*S.N.G.*] . . . could be utilized in this

proceeding subject to objections such as relevancy, hearsay, and related objections." (*Id.* at 9.) In

her response, Plaintiff counters that the documents she seeks are relevant, proportional, and not

privileged; that Movants' claims of privilege and work-product protection cannot be evaluated

without a privilege log; that the work-product doctrine does not protect the documents at issue

because she has substantial need for them and cannot without undue hardship obtain their

substantial equivalent by other means; and, that the documents she seeks have not been produced

in *S.N.G.*, Civ. No. 19-95 JAP/JHR. (*See generally* Doc. 51.)

## II.  Analysis

### A.    Legal Standards

#### 1.    Legal Standards Governing Subpoenas under Rule 45

Federal Rule of Civil Procedure 45 governs subpoenas issued to nonparties.  Fed. R. Civ.

P. 45; *see also* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to

produce documents and tangible things or to permit an inspection."); *Simon v. Taylor*, Civ. No.

12-0096 JB/WPL, 2014 WL 6633917, at *14 (D.N.M. Nov. 18, 2014) ("Discovery of non-parties

must be conducted by subpoena pursuant to [Rule] 45."). The "party or attorney responsible for

issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or

expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

In addition, "[a] subpoena to a third party under Rule 45 is subject to the same discovery

limitations as those set out in [Federal] Rule [of Civil Procedure] 26." *Quarrie v. Wells*, Civ. No.

3

17-350 MV/GBW, 2020 WL 4934280, at *2 (D.N.M. Aug. 24, 2020) (quoting *W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, Civ. No. 11-01611 MSK/CBS, 2014 WL 1257762, at *21 (D. Colo. Mar. 27, 2014)). Rule 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors that pertain to proportionality are

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.* "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

"While the court has considerable discretion with regard to regulating discovery which is exchanged in a lawsuit, discovery from third-parties in particular must, under most circumstances, be closely regulated." *Premier Election Sols., Inc. v. Systest Labs Inc.*, Civ. No. 09-01822 WDM/KMT, 2009 WL 3075597, at *3 (D. Colo. Sept. 22, 2009). "It is generally recognized that a non-party involuntarily embroiled in civil litigation should not be subjected to undue burden or significant expense merely by virtue of having received a subpoena." *New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, Civ. No. 12-526 MV/GBW, 2015 WL 13650053, at *2 (D.N.M. June 3, 2015) (quoting *W. Convenience Stores*, 2014 WL 1257762 at *21).

Rule 45 permits a subpoena recipient to serve written objections to the subpoena "before the earlier of the time specified for compliance or 14 days after the subpoena is served."[2] Fed. R. Civ. P. 45(d)(2)(B). A subpoena recipient may also request that the subpoena be quashed or

---

[2] Although Movants appear to have served their objections four days after the time specified for compliance and more than 14 days after the Subpoenas were served, Plaintiff does not argue that the objections were untimely. (Doc. 44 at 2; Docs. 44-1, 44-2; *see generally* Doc. 51.)

modified "[o]n timely motion" to "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A). Thus, under Rule 45, a subpoena recipient has "two separate and distinct procedural vehicles for asserting objections to a subpoena," *i.e.*, file objections under Rule 45(d)(2)(B) or file a motion to quash under Rule 45(d)(3), and these two vehicles are "not dependent upon or tied to" one another. *MetroPCS v. Thomas*, 327 F.R.D. 600, 608 (N.D. Tex. 2018).

Pursuant to Rule 45, a court "*must* quash or modify a subpoena" that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv) (emphasis added). "Generally, modification of a subpoena is preferable to quashing it outright." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *Whiteside v. State Farm Fire & Cas. Co.*, No. 1:20-CV-01210-JAP-LF, 2021 WL 1390805, at *3 (D.N.M. Apr. 13, 2021). Where a subpoena recipient asserts undue burden, he or she "has the burden to support its objection, unless the request is overly broad on its face." *Stewart v. Mitchell Transp.*, Civ. No. 01-2546 JWL, 2002 WL 1558210, at *4 (D. Kan. July 11, 2002). "Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Abila v. Funk*, No. CIV 14-1002 JB/SV, 2016 WL 5376323, at *6 (D.N.M. Sept. 20, 2016). "The determination of issues of burden and of reasonableness is committed to the trial court's sound discretion." *Id.*

2.      Legal Standards Governing Protective Orders under Rule 26(c)

Under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," *inter alia*, by

forbidding discovery, specifying its terms, or limiting its scope. Fed. R. Civ. P. 26(c)(1). "If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery." Fed. R. Civ. P. 26(c)(2). The party or person seeking a protective order has the burden to show "good cause" for it by submitting "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Fed. R. Civ. P. 26(c); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

3.    Legal Standards Governing the Attorney-Client Privilege[3]

The attorney-client privilege

> is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.

*In re Grand Jury Proc.*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981)) (quotation marks and citation omitted). Thus,

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance[4] permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection [is] waived.

---

[3] In civil cases, federal common law generally governs privilege regarding federal claims, while "state law governs privilege regarding [state law] claim[s]." Fed. R. Evid. 501. The Tenth Circuit has thus stated that, for claims of privilege where "both federal claims and pendent state law claims [are] implicated," courts "should consider both bodies of law." *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1369 (10th Cir. 1997); *Navajo Nation v. Urb. Outfitters, Inc.*, No. 12CV0195 BB/LAM, 2016 WL 3475340, at *3 n.2 (D.N.M. Mar. 25, 2016). Here, Plaintiff has asserted both federal and state law claims. (Doc. 1 at 14-20.) Thus, the Court should consider both federal and state law with respect to Movants' attorney-client privilege claims. *Sprague*, 129 F.3d at 1369; *Navajo Nation*, 2016 WL 3475340 at *3 n.2. However, neither side has addressed the choice-of-law question; both sides have relied exclusively on federal law to support their respective positions; and, neither side has identified any significant conflict between federal and state law on any relevant point. (*See generally* Docs. 44, 51, 60.) As such, the Court will apply federal common law to Movants' claims of privilege. *See Mackey v. Staples the Off. Superstore LLC*, No. CV 09-0023 JCH/WPL, 2010 WL 9523829, at *7 n.4 (D.N.M. Feb. 12, 2010) (applying federal common law to claim of privilege where neither party addressed choice-of-law question, both parties cited federal law to support their arguments, and there was "no indication that federal and state law diverge on the issues presented in this case").

[4] It appears that Movants are asserting the attorney-client privilege at the "instance" of the Board, because the Board's current attorney, Mr. Walz, objected to the Subpoenas and filed the present Motion on their behalf. (Docs. 44, 60.)

*K.G. by & through Christine C. v. Santa Fe Pub. Sch. Dist.*, No. 12-CV-1209 KBM/GBW, 2014 WL 12796749, at *3 (D.N.M. Mar. 27, 2014); *Trujillo v. Town of Taos*, No. CV 08-0661 ACT/RLP, 2009 WL 10700041, at *2 (D.N.M. Jan. 15, 2009). Although these elements "suggest[] the privilege only applies one way, operating to protect the client's communications to a lawyer, it is generally also recognized that the privilege will protect at least those attorney to client communications which would have a tendency to reveal the confidences of the client." *In re Grand Jury Proc.*, 616 F.3d at 1182 (quotation marks omitted). "However, when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *Id.* (quotation marks omitted).

"The burden of establishing the applicability of the attorney-client privilege rests on the party seeking to assert it." *Id.* at 1183. "The privilege must be strictly constructed and accepted only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Id.* (quotation marks omitted). "[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *Id.* at 1182 (quoting *Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1550–51 (10th Cir.1995)). Rather, the "communication between a lawyer and client must relate to legal advice or strategy sought by the client." *Id.* (quoting *United States v. Johnston,* 146 F.3d 785, 794 (10th Cir. 1998)).

4.    Legal Standards Governing the Attorney Work-Product Doctrine

Federal Rule of Civil Procedure 26 governs attorney work-product protection in civil cases in federal court. *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998). Under Rule 26(b)(3), "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative

(including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). "Litigation need not necessarily be imminent as long as the primary motivating purpose behind the creation of the document[s] was to aid in possible future litigation." *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 651 (D.N.M. 2007). However, a party may discover materials under Rule 26(b)(3) if they are "otherwise discoverable under Rule 26(b)(1)" and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).

If a court orders production of trial preparation materials under Rule 26(b)(3), "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Such opinion work product "is entitled to near absolute protection." *Roa v. Tetrick*, No. 1:13-CV-379, 2014 WL 695961, at *5 (S.D. Ohio Feb. 24, 2014). However, "[b]ecause the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product." *Am. Auto. Ins. Co. v. First Mercury Ins. Co.*, No. 1:13-CV-00439-MCA-LF, 2016 WL 7395219, at *3 (D.N.M. Oct. 22, 2016). As with the attorney-client privilege, the party asserting work-product protection has the burden of demonstrating that it applies. *Resol. Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995); *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir. 1984); *Am. Auto. Ins. Co.*, 2016 WL 7395219 at *3.

**B.    Application of Legal Standards to the Subpoenas at Issue**

Before reaching the substantive question of whether and to what extent the subpoenaed documents are discoverable, the Court must address Plaintiff's preliminary argument that Movants have waived any otherwise applicable privilege or protection by failing to produce a privilege log.

(Doc. 51 at 13-19.) Plaintiff is correct that "failure to produce a privilege log or production of an inadequate privilege log *may* be deemed waiver of the privilege." *Pueblo of Jemez v. United States*, No. CV 12-0800 JB/JHR, 2018 WL 4773357, at *3 (D.N.M. Oct. 3, 2018) (emphasis added); *see also Kannaday v. Ball*, 292 F.R.D. 640, 646 (D. Kan. 2013) (if a party fails to produce a privilege log or produces an inadequate one, "courts *may* deem the privilege waived") (emphasis added).

However, "[a] document-by-document privilege log is not always necessary when a party has, in good faith, asserted other non-privilege objections to the discoverability of a whole range of materials." *Driscoll v. Castellanos*, No. CV 19-527 JCH/KK, 2020 WL 7711869, at *6 (D.N.M. Dec. 29, 2020); *In re Joy Glob., Inc.*, No. CIV. 01-039-LPS, 2008 WL 2435552, at *4 (D. Del. June 16, 2008). For example, "when there is an objection to the scope of the request, a court should rule on [that] objection first, and, if it overrules the objection should then give the objecting party an opportunity to produce a privilege log." *Driscoll*, 2020 WL 7711869 at *6 (brackets and quotation marks omitted) (quoting *Youssef v. Bank of Am.*, No. CV 12-5364-GW (AGR), 2013 WL 12142563, at *4 (C.D. Cal. Sept. 24, 2013)); *cf. Texas Brine Co., LLC & Occidental Chem. Corp.*, 879 F.3d 1224, 1228-31 (10th Cir. 2018) (dismissing defendant's appeal where defendant failed to produce privilege log after district court narrowed scope of challenged subpoena and gave defendant "a second chance" to produce log). "Otherwise, any objection to the scope of a discovery demand would be rendered moot because interposing that objection would trigger the very burdensome obligation to prepare a privilege log that the objection would be intended to avoid." *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, 286 F. Supp. 3d 1, 7 (D.D.C. 2017); *see also, e.g., Aetna Inc. v. Mednax, Inc.*, No. 18-CV-02217-WB, 2019 WL 6250850, at *7 (E.D. Pa. Nov. 22, 2019) (declining to require privilege log where burden of "laborious privilege review" would "far exceed any likely benefit,

9

in terms of relevant documents that for some reason escape privilege or work product protection"); *Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3–4 (D.D.C. 2017) (narrowing subpoena where "most" of the responsive documents defendant "could reasonably be expected to 'possess'" would be privileged or protected and preparation of privilege log "would impose an undue and disproportionate burden").

Here, Movants objected to and have moved to quash Plaintiff's Subpoenas based not only on the attorney-client privilege and attorney work-product doctrine, but also on undue burden, overbreadth, and lack of relevance and proportionality. (Doc. 44 at 7-10; Docs. 44-3, 44-4.) Additionally, and as further discussed below, by their very nature significant portions of the documents Plaintiff seeks are likely to be attorney-client privileged and/or protected attorney work product. For these reasons, the Court declines to find that Movants have waived the attorney-client privilege or attorney work-product doctrine with respect to the subpoenaed documents by failing to submit a privilege log at this juncture. Rather, the Court will address Movants' non-privilege objections first and, to the extent it overrules them, will then give Movants an opportunity to produce a privilege log with respect to any responsive documents they continue to withhold on a claim of privilege or work-product protection. *Driscoll*, 2020 WL 7711869 at *6; *Youssef*, 2013 WL 12142563 at *4.

1.   <u>Paragraph No. 1 as to both Movants</u>

Paragraph No. 1 of the Subpoenas commands the production of all "engagement letters, fee agreements or other documents setting forth the scope of [Movants'] representation" of the School, the Board, or Defendant Jaramillo from 2009 to 2018. (Doc. 44-1 at 1; Doc. 44-2 at 1.) Plaintiff argues that she seeks these documents to clarify "whose interests each attorney was representing" and "the attorneys' biases towards [Defendant] Jaramillo" during the specified time

frame. (Doc. 51 at 13.) Plaintiff alleges that this information is relevant because Movants represented the School, the Board, and/or Defendant Jaramillo in relation to claims that Defendant Jaramillo engaged in sexual misconduct before he sexually abused L.A., and in the course of this representation received information indicating that Defendant Jaramillo posed a risk of sexually abusing female students at the School. (*Id.* at 8-12.) Movants objected to Paragraph No. 1 on the bases of undue burden, lack of relevance and proportionality, attorney-client privilege, and the attorney work-product doctrine. (Doc. 44-3 at 1-2; Doc. 44-4 at 1-2.)

Initially, the Court finds that the documents Paragraph No. 1 seeks are relevant to Plaintiff's claims against the Board and the Board's defenses. Fed. R. Civ. P. 26(b)(1). To support her claims of negligence and violations of substantive due process, equal protection, and Title IX against the Board, Plaintiff has alleged that the Board knew or should have known of, or was deliberately indifferent to, Defendant Jaramillo's prior sexual misconduct and its attendant risks. (Doc. 1 at 16-19.) An attorney's knowledge is generally imputed to his or her client. *Long v. Bd. of Governors of the Fed. Rsrv. Sys.*, 117 F.3d 1145, 1153 (10th Cir. 1997); *Federated Towing & Recovery, LLC v. Praetorian Ins. Co.*, 283 F.R.D. 644, 665 (D.N.M. 2012). Thus, Plaintiff could show that the Board knew of Defendant Jaramillo's prior sexual misconduct by showing that its counsel knew of the misconduct. Whether Movants represented the Board when they allegedly learned that Defendant Jaramillo had engaged or was engaging in sexual misconduct is therefore relevant to Plaintiff's claims and, presumably, the Board's defenses.

The Court further finds that Paragraph No. 1 does not impose an undue burden on Movants and is proportional to the needs of the case in light of the factors listed in Rule 26(b). Fed. R. Civ. P. 26(b)(1). In particular, the Court concludes that the likely benefit of the discovery sought outweighs its likely burden or expense. *Id.* The category of documents sought—"engagement

letters, fee agreements or other documents setting forth the scope of [Movants'] representation"—
is narrowly drawn, and is limited to Movants' representation of the School, the Board, and/or
Defendant Jaramillo, from 2009 (the year after Defendant Jaramillo was hired to head the School)
to 2018 (L.A.'s last year at the School). (Doc. 44-1 at 1; Doc. 44-2 at 1.) It seems facially unlikely
that Movants entered into a burdensome number of fee agreements with the School, the Board,
and/or Defendant Jaramillo in that ten-year period, and Movants have wholly failed to meet their
burden to show that they did. *Stewart*, 2002 WL 1558210 at *4. The Court will therefore overrule
Movants' objections to Paragraph No. 1 based on undue burden and lack of relevance and
proportionality.

Turning to Movants' privilege and work-product objections to this paragraph, the Court
notes that the attorney-client privilege generally does not apply to attorney fee arrangements.
*Baylon v. Wells Fargo Bank, N.A.*, No. CIV 12-0052 MCA/KBM, 2012 WL 12819335, at *2
(D.N.M. Dec. 20, 2012). "It is well recognized in every circuit, including our own, that the identity
of an attorney's client and the source of payment for legal fees are not normally protected by the
attorney-client privilege." *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1488 (10th Cir. 1990).
However, it is possible that "disclosing the actual fee contracts" at issue may "reveal[] confidential
information along with unprotected fee information." *Id.* at 1492. Likewise, "attorney fee
arrangements made at the outset of a representation *normally* do not contain mental impressions
of the attorney such that work product protection should apply"; in theory, however, they could.
*Baylon*, 2012 WL 12819335 at *3 (emphasis added). The Court will therefore require Movants,
within twenty-one (21) days of entry of this Order, to produce (a) documents responsive to
Paragraph No. 1 and/or (b) a privilege log that complies with Rules 26(b)(5) and 45(e)(2) with

respect to any responsive documents they continue to withhold on a claim of privilege or work-product protection. *Driscoll*, 2020 WL 7711869 at *6; *Youssef*, 2013 WL 12142563 at *4.

      2.    <u>Paragraph No. 2 as to both Movants</u>

      Paragraph No. 2 of the Subpoenas commands the production of Movants' "complete file[s] related to [their] representation of the School, the Board, and/or [Defendant] Jaramillo in connection with the sexual harassment and retaliation complaints" of former School employee Gabriela Marquez from 2009 to 2013.[5] (Doc. 44-1 at 1; Doc. 44-2 at 1.) According to Plaintiff, the requested documents are relevant and discoverable because again, what Movants—and thus by imputation the Board—knew about Defendant Jaramillo's alleged sexual misconduct before he allegedly abused L.A. is directly relevant to her claims against the Board and the Board's defenses. (Doc. 51 at 8-9, 12-13.) Movants objected to Paragraph No. 2 on the bases of undue burden, lack of proportionality, attorney-client privilege, and the attorney work-product doctrine, and argue that even creating a privilege log in response to this paragraph would be unduly burdensome. (Doc. 44-3 at 2-4; Doc. 44-4 at 2-4.)

      The Court agrees with Movants that Paragraph No. 2 seeks such broad swaths of potentially privileged and protected documents that even producing a responsive privilege log would impose an undue burden. Paragraph No. 2 does include within its scope documents that appear relevant to Plaintiff's claims and Defendants' defenses, *e.g.*, documents regarding concerns Ms. Marquez allegedly expressed to Mr. Narvaez about Defendant Jaramillo's interactions with female students. (Doc. 51 at 9.) However, Plaintiff has made no effort to exclude from this paragraph whole categories of protected documents necessarily included within it, such as confidential client

---

[5] Paragraph No. 2 goes on to list certain subcategories of documents specifically included within it; however, the paragraph is not limited to these subcategories. (Doc. 44-1 at 1-2; Doc. 44-2 at 1-2.)

communications and core attorney work product. Rather, she has requested Movants' "entire file[s]" regarding Ms. Marquez's complaint—a complaint which involved a charge of discrimination and a settlement and thus certainly implicated "possible future litigation." *Anaya*, 251 F.R.D. at 651; (*see* Doc. 51 at 8-9); *S.N.G.*, Civ. No. 19-95 JAP/JHR (Doc. 123 at 13-17). Nor has Plaintiff made any effort to exclude from Paragraph No. 2 otherwise responsive documents that she already possesses from the *S.N.G.* litigation, even though Rule 45 expressly requires her to "take reasonable steps to avoid imposing undue burden or expense" on Movants. Fed. R. Civ. P. 45(d)(1); *see, e.g.*, *S.N.G.*, Civ. No. 19-95 JAP/JHR (Doc. 124-15). The Court declines to re-write this facially burdensome paragraph for Plaintiff and will thus quash it without prejudice to Plaintiff's ability to cure its defects by issuing more narrowly tailored subpoenas.

3.    <u>Paragraph No. 3 as to both Movants</u>

Paragraph No. 3 of the Subpoenas commands the production of:  (a) "all documents showing [Movants'] involvement" in June Romero's 2014 investigation of the complaints of School employees Abiegal Escobar and  Angela  Ortiz; (b) "any communications" Movants had with one another or with Ms. Romero, the School, the Board, or Defendant Jaramillo regarding these complaints or the firing of Ms. Ortiz; and, (c) "any invoices [Movants] generated in connection with these matters." (Doc. 44-1 at 2; Doc. 44-2 at 2.) According to Plaintiff, the requested documents are relevant because Ms. Ortiz complained that Defendant Jaramillo "was sexually harassing" Ms. Escobar, and Mr. VanAmberg "assist[ed] [Defendant] Jaramillo in firing [Ms.] Ortiz" after she did so. (Doc. 51 at 10.) Movants objected to Paragraph No. 3 on the bases of undue burden, attorney-client privilege, and the attorney work-product doctrine, asserting that Ms. Romero's 2014 investigation "was undertaken at the request of Mr. VanAmberg in his

capacity as counsel for the Board in anticipation of litigation." (Doc. 44-3 at 4-5; Doc. 44-4 at 4-5.)

Again, the Court agrees with Movants that, particularly when read in the context of the Subpoenas as a whole, Paragraph No. 3 seeks such broad swaths of potentially privileged and protected documents that even producing a responsive privilege log would impose an undue burden. Paragraph No. 3 includes within its scope documents that may be relevant to Plaintiff's claims and Defendants' defenses, *e.g.*, documents regarding allegations that Defendant Jaramillo sexually harassed Ms. Escobar. *S.N.G.*, Civ. No. 19-95 JAP/JHR (Doc. 123 at 18). However, as in Paragraph No. 2, Plaintiff has made no effort to exclude from this paragraph whole categories of protected documents necessarily included within it, such as confidential client communications and core attorney work product.[6] Rather, she has requested "all documents" that "show[]" Movants' "involvement" in Ms. Romero's investigation,  as well as "any communications" Movants had with each other, Ms. Romero, the School, the Board, or Defendant Jaramillo "regarding these matters" or Ms. Ortiz's termination, as well Movants' "invoices . . . generated in connection with these matters."[7] (Doc. 44-1 at 2; Doc. 44-2 at 2.) Nor has Plaintiff made any effort to exclude from this paragraph responsive documents she already possesses from the *S.N.G.* litigation, even though Rule 45 requires her to "take reasonable steps to avoid imposing undue burden or expense" on Movants. Fed. R. Civ. P. 45(d)(1); *see, e.g.*, *S.N.G.*, Civ. No. 19-95

---

[6] Plaintiff has not challenged Movants' assertion that Ms. Romero's 2014 investigation "was undertaken at the request of Mr. VanAmberg in his capacity as counsel for the Board in anticipation of litigation." (Doc. 44-3 at 4-5; Doc. 44 at 4-5.)

[7] The Court acknowledges that invoices "rarely reflect the substance of attorney-client conversations in any great detail." *Murray v. Burt*, No. 09-CV-1150 WJ/RHS, 2012 WL 13005440, at *3 (D.N.M. Apr. 25, 2012). However, by the same token, Plaintiff has failed to adequately explain why the requested invoices would be relevant to any party's claims or defenses and proportional to the needs of the case, and the Court is disinclined to speculate on this point. (*See generally* Doc. 51.)

JAP/JHR (Docs. 125-4, 125-5). The Court declines to re-write this paragraph for Plaintiff and will quash it without prejudice to Plaintiff's ability to cure its defects by issuing more narrowly drafted subpoenas.

4.    <u>Paragraph No. 4 as to Mr. Narvaez</u>[8]

Paragraph No. 4 of the Subpoena directed to Mr. Narvaez commands the production of: (a) "all documents showing [Mr. Narvaez's] involvement" in Ms. Romero's 2017 investigation of (1) the "sexual harassment/retaliation complaint made by School employee Deana Gallegos" and (2) the "sexual abuse/assault claim made by student [S.N.G.]"; and, (b) "any communications" Mr. Narvaez had with Mr. VanAmberg, Ms. Romero, the School, the Board, or Defendant Jaramillo regarding "this matter." (Doc. 44-1 at 2.) This paragraph states that it does not seek Mr. Narvaez's "complete litigation file related to the lawsuit filed by [Ms.] Gallegos" but does include "any invoices [he] generated in connection with these matters, including the litigation." (*Id.*)

Plaintiff argues that the requested documents are relevant because, again, what Movants and thus the Board knew about Defendant Jaramillo's sexual misconduct prior to his sexual abuse of L.A. is relevant to her claims against the Board and the Board's defenses. (Doc. 51 at 12-13.) Mr. Narvaez, however, objected to this paragraph on the bases of undue burden, attorney-client privilege, and the attorney work-product doctrine. (Doc. 44-4 at 5-6.) In this regard, Mr. Narvaez asserts that Ms. Romero's 2017 investigation "was undertaken at the request of counsel for the Board for the purpose of assessing any legal risks to which the Board may have been exposed." (*Id.* at 6.)

Once again, the Court agrees with Mr. Narvaez that Paragraph No. 4 seeks such broad swaths of potentially privileged and protected documents that even producing a responsive

---

[8] In her response, Plaintiff states that she "is willing to withdraw" Paragraph No. 4 of her Subpoena to Mr. VanAmberg. (Doc. 51 at 23.) Thus, the Court considers this paragraph solely as it pertains to Mr. Narvaez.

privilege log would impose an undue burden. Paragraph No. 4 does appear to include within its scope documents relevant to Plaintiff's claims and Defendants' defenses, *e.g.*, documents regarding Mr. Narvaez's involvement in Ms. Romero's investigation of S.N.G.'s allegations. However, Plaintiff has made little effort to exclude from this paragraph whole categories of protected documents necessarily included within it, such as confidential client communications and core attorney work product.[9] Rather, she has requested "all documents" that "show[]" Mr. Narvaez's "involvement" in Ms. Romero's investigation, as well as "any communications" he had with Mr. VanAmberg, Ms. Romero, the School, the Board, or Defendant Jaramillo "regarding this matter," as well his "invoices . . . generated in connection with these matters." (Doc. 44-1 at 2.) And again, Plaintiff has made no effort to exclude from this paragraph documents she already possesses from the *S.N.G.* litigation, even though Rule 45 requires her to "take reasonable steps to avoid imposing undue burden or expense" on Movants. Fed. R. Civ. P. 45(d)(1); *see, e.g., S.N.G.*, Civ. No. 19-95 JAP/JHR (Doc. 125-25). Once again, the Court declines to re-write this paragraph for Plaintiff and will quash it without prejudice to Plaintiff's ability to cure its defects by issuing more narrowly drafted subpoenas.

    5.    Paragraph No. 5 as to both Movants

Paragraph No. 5 of the Subpoenas commands the production of "all documents in [Movants'] file[s] related to any [School] personnel matter not previously addressed," in which Movants "represented the School, Board, or [Defendant] Jaramillo," regarding "any allegations of misconduct" by any School employee or student against Defendant Jaramillo "or any other School employee." (Doc. 44-1 at 2; Doc. 44-2 at 2.) Movants objected to this paragraph on the bases of

---

[9] Plaintiff does state in Paragraph No. 4 that she is not requesting Mr. Narvaez's "complete litigation file related to the lawsuit filed by [Ms.] Gallegos." (Doc. 44-1 at 2.) However, she fails to indicate which documents in Mr. Narvaez's "complete litigation file" need not be produced. (*Id.*)

undue burden, overbreadth, attorney-client privilege, and the attorney work-product doctrine. (Doc. 44-3 at 6-7; Doc. 44-4 at 6-7.)

Paragraph No. 5 is remarkably overbroad in seeking Movants' complete files regarding any representation they provided to the School, the Board, or Defendant Jaramillo involving any staff or student allegation of *any type of misconduct against any School employee*, regardless of whether the alleged misconduct has any connection to Plaintiff's claims or Defendants' defenses. Overbreadth alone is sufficient reason to quash this paragraph.

Additionally, like many of the Subpoenas' other paragraphs, this paragraph seeks such broad swaths of potentially privileged and protected documents that even producing a responsive privilege log would impose an undue burden. Plaintiff has made no effort to exclude from this paragraph whole categories of protected documents necessarily included within it and has instead simply requested "all documents in [Movants'] files." (Doc. 44-1 at 2; Doc. 44-2 at 2.) Nor has Plaintiff attempted to exclude from Paragraph No. 5 otherwise responsive documents she may already possess from the *S.N.G.* litigation, even though Rule 45 requires her to "take reasonable steps to avoid imposing undue burden or expense" on Movants. Fed. R. Civ. P. 45(d)(1). Yet again, the Court declines to re-write this paragraph for Plaintiff and will quash it without prejudice to Plaintiff's ability to cure its defects by issuing much more narrowly drafted subpoenas.

6.   Paragraph No. 6 as to both Movants

Paragraph No. 6 of the Subpoenas commands the production of "all communications [Movants] had with [the New Mexico Public Education Department]" regarding the School, the Board, or Defendant Jaramillo "from 2017 to the present." (Doc. 44-1 at 2; Doc. 44-2 at 2.) Plaintiff argues that these documents are relevant because the New Mexico Public Education Department ("NMPED") investigated and substantiated Ms. Gallegos' and S.N.G.'s allegations of sexual

misconduct against Defendant Jaramillo and ultimately disciplined Defendant Jaramillo and closed the School. (Doc. 51 at 1, 12); *S.N.G.*, Civ. No. 19-95 JAP/JHR (Doc. 123 at 3, 30-32). Movants objected to Paragraph No. 6 on the bases of undue burden, attorney-client privilege, and the attorney work-product doctrine, and also because they claim Plaintiff already possesses all otherwise discoverable documents responsive to this paragraph from the *S.N.G.* litigation. (Doc. 44-3 at 7-8; Doc. 44-4 at 7-8.)

On or about March 12, 2020, Plaintiff subpoenaed eleven categories of documents from the NMPED in *S.N.G.*, including all records of School employees' complaints that Defendant Jaramillo had engaged in "inappropriate conduct" toward employees or students. (Doc. 51-11.) Plaintiff acknowledges that she has thus "received some documents through NMPED." (Doc. 51 at 22.) Nevertheless, Plaintiff asserts that Mr. Narvaez may also "have Board materials in his files," citing to a February 4, 2020 e-mail from Mr. Walz stating that, although "the state" seized all of the Board's materials, he would "check with" Mr. Narvaez "to see if he may have retained any [Board] records in his file." (*Id.* at 23; Doc. 51-10 at 1.)

Plaintiff's citation to Mr. Walz's e-mail fails to elucidate, and she otherwise fails to explain, why she believes the NMPED would have discarded copies of relevant communications between itself and Mr. Narvaez regarding the School, the Board, or Defendant Jaramillo. Moreover, although it is possible that the NMPED and Mr. Narvaez communicated regarding School-related matters other than Defendant Jaramillo's alleged misconduct, it is not apparent, and again Plaintiff fails to explain, why such communications would be relevant to any party's claims or defenses and proportional to the needs of the case. In short, it seems overwhelmingly likely that Plaintiff already possesses all relevant documents responsive to this paragraph.

As previously noted, "a non-party involuntarily embroiled in civil litigation should not be subjected to undue burden or significant expense merely by virtue of having received a subpoena." *New Mexico Oncology & Hematology Consultants, Ltd.*, 2015 WL 13650053 at *2. In the Court's view, it would impose an undue burden on Movants to require them to search through their files to locate and produce responsive documents that are largely if not wholly duplicative of documents Plaintiff has already obtained elsewhere. The Court will therefore quash Paragraph No. 6 without prejudice to Plaintiff's ability to cure its defects by issuing more narrowly drafted subpoenas.

7.   <u>Paragraph No. 7 as to Mr. Narvaez and Paragraph No. 8 as to Mr. VanAmberg</u>

This paragraph commands the production of "all lawsuits, claims or other documents . . . showing that [Movants] represented [Defendant] Jaramillo, personally," or represented a school or school district other than the School "in which [Defendant] Jaramillo was involved in [Movants'] representation." (Doc. 44-1 at 2; Doc. 44-2 at 2-3.) None of Plaintiff's relevance arguments appear to be addressed to this paragraph in particular; however, Plaintiff does describe allegations of sexual misconduct made against Defendant Jaramillo before the School hired him, when he worked for other school districts. (Doc. 51 at 8); *S.N.G.*, Civ. No. 19-95 JAP/JHR (Doc. 123 at 10-11). Movants objected to this paragraph on the bases of undue burden, overbreadth, lack of relevance and proportionality, attorney-client privilege, and the attorney work-product doctrine. (Doc. 44-3 at 9; Doc. 44-4 at 8-9.)

The Court finds that this paragraph is overbroad because it can be read to seek Movants' entire files regarding any non-School-related representation of Defendant Jaramillo personally and any non-School-related educational representation in which Defendant Jaramillo was involved, regardless of whether the subject matter of the representation has any connection to Plaintiff's claims or Defendants' defenses. Although this paragraph could conceivably include relevant

documents within its scope, it is just as likely to include wholly irrelevant documents, as well as whole categories of documents that are plainly attorney-client privileged or protected by the attorney work-product doctrine. The Court will therefore quash this paragraph without prejudice to Plaintiff's ability to cure its defects by issuing more narrowly drafted subpoenas.

      8.    <u>Paragraph No. 7 as to Mr. VanAmberg</u>

Finally, Paragraph No. 7 of the Subpoena directed to Mr. VanAmberg commands the production of documents

> evidencing any communications between [Mr. VanAmberg] and former Board member, Dr. Stan Sanders, in which [Dr. Sanders] voiced concerns to [Mr. VanAmberg] about the sexual harassment allegations previously brought against [Defendant] Jaramillo by Eunice Salazar . . . , and in which [Mr. VanAmberg] reportedly assured [Dr. Sanders] that [Mr. VanAmberg] had looked into the matter and it was without merit.

(Doc. 44-2 at 2.) This paragraph also seeks "documents showing that [Mr. VanAmberg] obtained and shared information" regarding Ms. Salazar "with the Board." (*Id.*)

With respect to this paragraph, Plaintiff asserts that sometime after Ms. Marquez's complaints against Defendant Jaramillo, Dr. Sanders "learned about the Eunice Salazar Lawsuit and contends that he voiced his concerns to [Mr.] VanAmberg about [Defendant] Jaramillo's involvement in that matter." (Doc. 51 at 9-10.) According to Plaintiff, however, "[Mr.] VanAmberg reportedly assured Dr. Sanders there was nothing to" Ms. Salazar's allegations. (*Id.*) In a footnote, Plaintiff adds that her counsel "spoke to Dr. Sanders before opposing counsel and obtained his statement before opposing counsel decided that Plaintiff should have no contact with Board members, which precluded her from obtaining a formal Affidavit." (*Id.* at 10 n.3.) Plaintiff noticed Dr. Sanders' deposition on July 9, 2021. (Doc. 70.) Mr. VanAmberg objected to this paragraph on the bases of undue burden and attorney-client privilege, asserting that it

"unambiguously requests communications between Mr. VanAmberg and members of the Board that occurred while Mr. VanAmberg was counsel for the Board." (Doc. 44-3 at 8.)

Initially, the Court finds that Paragraph No. 7 to Mr. VanAmberg is quite narrowly drawn and seeks documents that are arguably relevant to Plaintiff's claims against the Board and the Board's defenses, *i.e.*, documents regarding the Board's knowledge of Ms. Salazar's allegations of prior sexual misconduct against Defendant Jaramillo. The Court will therefore overrule Mr. VanAmberg's objection based on undue burden.

However, the Court agrees with Mr. VanAmberg that this paragraph categorically seeks communications that the attorney-client privilege would protect, *if*: (a) Mr. VanAmberg in fact represented the Board at the time of the communication(s) at issue; and, (b) the privilege has not been waived. Mr. VanAmberg's response to Paragraph No. 1 should provide some clarification as to the Court's first caveat. As to its second caveat, footnote 3 of Plaintiff's response suggests that Dr. Sanders may have waived any attorney-client privilege protecting his responsive communications with Mr. VanAmberg by voluntarily disclosing them to Plaintiff's counsel. *See In re Grand Jury Proc.*, 616 F.3d at 1184 ("Because confidentiality is the key to maintaining the attorney-client privilege, a party waives the privilege when he voluntarily discloses to a third party material or information that he later claims is protected."). Although there is currently no actual evidence in the record that Dr. Sanders disclosed (or denies disclosing) his alleged communications with Mr. VanAmberg, Plaintiff appears to be in the process of collecting such evidence by way of Dr. Sanders' deposition.

In contrast, nothing in the record suggests that any other Board member has voluntarily disclosed any confidential communications he or she may have had with Mr. VanAmberg

regarding Ms. Salazar. Thus, these communications would remain privileged if made for the purpose of obtaining legal advice in the course of Mr. VanAmberg's representation of the Board.

In light of the foregoing, the Court will require Mr. VanAmberg, within twenty-one (21) days of entry of this Order, to produce (a) documents responsive to Paragraph No. 7 and/or (b) a privilege log that complies with Rules 26(b)(5) and 45(e)(2) with respect to any responsive documents he continues to withhold based on the attorney-client privilege. *Driscoll*, 2020 WL 7711869 at *6; *Youssef*, 2013 WL 12142563 at *4. Mr. VanAmberg may seek an extension of time to produce documents and/or a privilege log regarding Dr. Sanders' responsive communications if he has not had a reasonable time after Dr. Sanders' deposition to assess whether any applicable privilege has been waived.

### III.  Conclusion

IT IS THEREFORE ORDERED that the Motion to Quash Subpoenas or, in the Alternative, to Enter a Protective Order as to Subpoenas Served on Attorneys Henry Narvaez, Esq. and Ronald VanAmberg, Esq. (Doc. 44) is GRANTED IN PART and DENIED IN PART as follows:

1.      The Motion is DENIED in that:

    a.      By **Monday, August 9, 2021**, Movants shall produce (1) documents responsive to Paragraph No. 1 of the Subpoenas and/or (2) a privilege log with respect to any responsive documents they continue to withhold based on the attorney-client privilege or the attorney work-product doctrine; and,

    b.      By **Monday, August 9, 2021**, Mr. VanAmberg shall produce (1) documents responsive to Paragraph No. 7 of the Subpoena directed to him and/or (2) a privilege log with respect to any responsive documents he continues to withhold based on the attorney-client privilege.

2.      In all other respects, the Motion is GRANTED and the Subpoenas to Produce Documents,

Information, or Objects or to Permit Inspection of Premises in a Civil Action (Docs. 44-1,

44-2) issued to Movants are hereby QUASHED.

IT IS SO ORDERED.

_KIRTAN KHALSA_
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE